IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BETTER PATH COALITION PLANNING GROUP**, an unincorporated association; and **KAREN FERIDUN**,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF HARRISBURG**; and Hon. **WANDA R. D. WILLIAMS**, Mayor, City of Harrisburg,<br><br>Defendants. | Case No. _____ |

**VERIFIED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs are a coalition of climate activists who hope to host a family- and child-friendly weekend event in June to raise awareness about climate change. Regrettably, Defendant City of Harrisburg has insisted that Plaintiffs pay expensive fees and user costs, procure insurance coverage that is inextricably correlated with the coalition's message, agree to substantially overbroad indemnification and hold-harmless provisions, and comply with other assorted

1

demands as a precondition for using the City's traditional public forums, including Riverfront Park and the streets leading to the Pennsylvania Capitol Building. Significantly, none of these requirements are codified in any law, ordinance, or regulation.

2. Municipalities have long been allowed to impose limited regulations for use of traditional public forums, but these regulations must comply with the First Amendment. Permitting laws must a) not delegate overly broad licensing discretion, b) be content neutral, c) be narrowly tailored to serve a significant governmental interest, and d) leave open ample alternatives for communication. Harrisburg's demonstration-permitting scheme is suffused with standardless discretion, content-based distinctions, and overbreadth. In short, the permitting scheme suffers from numerous fatal First-Amendment flaws, making it unconstitutional both on its face and as applied to Plaintiffs.

3. Plaintiffs ask this Court to declare that Harrisburg's permitting scheme is unconstitutional and to enjoin its enforcement. Since the demonstrations are fast approaching on June 11-13, Plaintiffs need relief in sufficient time to organize their event and assure prospective attendees that all activities comport with law.

## JURISDICTION

4. Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate rights protected by the First and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3). This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

## PARTIES

5. Plaintiff BETTER PATH COALITION PLANNING GROUP represents an unincorporated association of nearly forty statewide frontline- and grassroots-led organizations that advocate for a clean, renewable-energy future for Pennsylvania and a government that puts the interests of people before the fossil-fuel industry. A list of member organizations is attached as Exhibit 1. BETTER PATH COALITION PLANNING GROUP is sponsoring the Climate Convergence, a gathering of climate activists and members of the public scheduled for June 11-13, 2022, in Harrisburg.

6. Plaintiff KAREN FERIDUN is a member of BETTER PATH COALITION PLANNING GROUP and a lead organizer of the Climate Convergence. She is a resident of Berks County, Pennsylvania.

3

7. Defendant CITY OF HARRISBURG is a political subdivision organized as a City of the Third Class under the laws of Pennsylvania. *See* 53 Pa. Stat. Ann. §§ 41101-41625.

8. Defendant Hon. WANDA R. D. WILLIAMS is Mayor of the CITY OF HARRISBURG. As Harrisburg's highest ranking elected official, Mayor Williams is vested with executive power. *See* 53 Pa. Stat. Ann. § 41411. As such, she is responsible for ensuring that the City's public spaces are available for public uses consistent with the U.S. Constitution. At all times hereafter mentioned, Mayor Williams was acting under color of state law. She is sued in her official capacity.

## FACTS

**The Climate Convergence**

9. Plaintiff BETTER PATH COALITION PLANNING GROUP resolved earlier this year to hold a "Climate Convergence" in Pennsylvania's Capitol city of Harrisburg. Organizers selected Harrisburg because it is the Commonwealth's seat of power and many public officials with the authority to address climate change have their business offices in the City.

10. The Convergence is intended to be a "diverse, inclusive, peaceful gathering organized to demand urgent legislative and administrative action on climate." *See* https://www.pennsylvaniaclimateconvergence.org/.

11. The dates chosen for the event are June 11-13, 2022.

12. Organizers are planning one or more demonstration activities on each of the three days.

   a. On Saturday, June 11, they are planning a climate-themed festival of art, music, theatre, talks, tabling and more at Harrisburg's Riverfront Park.

   b. On Sunday, June 12, they are planning a "day of action," starting with an interfaith service at Riverfront Park, followed by a march led by children through downtown Harrisburg that passes by Pennsylvania agencies whose activities impact the climate, and concludes with a brief rally on the rear steps of the Capitol Building.

   c. On Monday, June 13, participants hope to install a climate countdown clock and deliver a petition to elected officials in their offices at the State Capitol.

**Obtaining Permits**

13. Organizers want all Convergence events to be peaceful and law-abiding. They also want participants to feel safe, especially the families with young children who will lead Sunday's march. Accordingly, in February 2022, Plaintiff Feridun investigated whether the groups needed to secure permits and

whether the City or state government imposed any requirements or guidelines on marches and festivals.

14. Plaintiff Feridun's research revealed that three different government agencies had jurisdiction over the public forums they hoped to use during the weekend demonstrations.

15. The Capitol Police, which are part of Pennsylvania's General Services Administration, regulate demonstrations at the Capitol Building.

16. The Pennsylvania Department of Transportation ("PennDOT") regulates some of the roads on which Convergence demonstrators planned to march on Sunday, walking from Riverfront Park to the rear steps of the Capitol near Commonwealth Avenue.

17. The City of Harrisburg regulates use of Riverfront Park, the site of Saturday's festival and Sunday's interfaith service, and the starting point of the march to the Capitol. The City of Harrisburg also regulates several roads on Sunday's march route not governed by PennDOT.

18. Plaintiff Feridun discovered that all three agencies imposed what she believed were unconstitutional restrictions on the use of traditional public forums. With the help of undersigned counsel, Plaintiffs overcame the obstacles imposed

6

by PennDOT and the Capitol Police, leaving only the disputes with Harrisburg now raised in this lawsuit.

**Harrisburg's Permitting Scheme**

19. Harrisburg's City Code contains only one ordinance that arguably applies to use of public spaces for expressive activities. Section 10-301.20 of the City's Code dictates that certain groups must obtain a permit to use city parks. A copy of the Code provision is attached as Ex. 2. Section 10-301.20 contains no reference to fee schedules, insurance, or indemnity requirements, and simply states that permits may be granted "upon such reasonable conditions as deemed appropriate."

20. The City has no other ordinance governing the use of other traditional public forums, such as City streets and sidewalks.

21. Absent any duly promulgated law to regulate demonstrations in public streets, and no promulgated guidelines to regulate fees, insurance and indemnification requirements in any traditional public forum, Harrisburg officials effectively have unbridled discretion to decide who gets to use public spaces and on what terms.

22. Harrisburg gave Plaintiffs three documents that purport to regulate use of public forums. Their provenance and historical application are not readily ascertainable.

23. A document entitled, "Special Event Permit Procedures" (attached as Exhibit 3), defines "special events" as "any event requesting to close access to a public street that does not fall under the Block Party Permit / Moving Truck Permit definitions." It also includes, among other things, the following:

   a. A requirement that applicants submit a permit application "no less than 60 days before the event" and "no less than 90 days before the event" if "State roads" are involved, as in the case of the Climate Convergence, with no exceptions for emergent political demonstrations;

   b. Paragraph 3 requires a "traffic control plan" and references a mandatory "service fee"; and

   c. The reverse side of the two-page form discusses the "Approval Process" and references required fees for traffic control and staffing, but provides no guidelines or standards for estimating the amounts of these fees.

24. A second document is titled, "Application for Special Events Permit" (attached as Exhibit 4). This document specifies additional conditions, including:

   a. A requirement that the applicant notify businesses and residents in the area of the event at least 30 days beforehand;

    b. A requirement that the applicant pay some unidentified amount to "rent any metered parking spaces that will not be accessible during the event"[1];

    c. A statement that the requesting party "shall be liable for any loss, damage, or injury sustained by any person or by the City resulting from the activity for which the permit has been issued for this purpose";

    d. A requirement to provide a "Certificate of Insurance," proving coverage of $250,000 per person and $1 million per occurrence, although the document does not specify the type of insurance; and

    e. A statement that, "All required fees must be paid prior to City Staff being scheduled for event," without specifying the amount of fees or how they will be calculated.

25. A third document, titled "Release and Waiver of Liability" (attached as Exhibit 5), seemingly applies to use of City parks, as it references "Park Permit" and approval by "Parks and Recreation staff." While there is no indication whether it applies to use of other public forums, like streets and sidewalks for marches and demonstrations, this form includes the following problematic provisions:

---

[1] The Application for Special Event Permit document specifically instructs the applicant to call "STANDARD PARKING" for details about parking space rental. When Plaintiff Feridun called Harrisburg's Standard Parking department at the number identified in the document, the staff informed her that the per-space fee would be $44, but they did not disclose the number of spaces that would need to be rented at that rate.

a. One paragraph states that by submitting this Permit Application, "the applicant is certifying that no expense will be borne by the City of Harrisburg in connection with the event or activity described in this Application for which the City will not be fully reimbursed. Further, the applicant certifies that the City is not liable or responsible for any cost, effect, error, omission or loss of any kind associated with the event or activity listed herein, and that the City is fully indemnified and held harmless from any claims or judgments arising from such. All park permit activities must be fully insured by the applicant with the City named as an 'Additional Insured.' All facilities are rented in 'as is' condition."

b. Below that, the form states that, "[t]here are no waivers or reductions of any fees for any park."

c. A section headed, "PERMIT HOLDER RESPONSIBILITIES," reads: "If it is determined by the City that Police, DPRE staff, or other City personnel resources must be present to ensure the safe operation of your event, the Permitee [sic] must pay for all personnel and equipment costs. The city reserves the right to require such payment in advance."

d. A section titled, "INSURANCE REQUIREMENTS," specifies that applicants must sign a "Release and waiver of liability," show "proof of Personal Auto Liability Coverage for themselves and all others who plan on driving and parking on-site…", and events with an estimated audience of more than 51 people must meet the following insurance requirements (which notably conflict with insurance requirements for special events, noted previously):

   i. "Applicants must provide Event Liability coverage of $I,000,000 [sic] per occurrence and $ I,000.000 [sic] aggregate ill [sic]: Standard Liability coverage of $1,000,000 per occurrence and $2,000,000 aggregate."

      ii. "Applicants must provide Auto Liability of $1,000.000 Combined Single Limit for Corporations and $300,000 Combined Single Limit for individuals."

      iii. "All insurance certificates shall be originals listing the City of Harrisburg as an Additional Insured. All certificates must be signed by a licensed insurance broker or insurance company representative. Sub limits shall not be less than the per occurrence limit amount required. If certificates are not received at least thirty (30) days prior to the event, the permit is not valid."

e. Finally, the form requires applicants to endorse the following provisions, among others:

      i. "I hereby assume all risk and responsibility of damage to the property of the City of Harrisburg as it relates to my event and my use and/or misuse; and hod [sic] the City of Harrisburg, it's [sic] agents and representatives harmless for any and all suits relating to the use of City owned facilities."

      ii. "I hereby fully and forever release, discharge, and agree not to sue the City of Harrisburg, and of [sic] their officials, elected or appointed, employees (past or present), and contractors/vendors(past or present), sponsors or their officers, directors, agents, employees [sic] representatives, and successors for any and all claims, causes of action or liability for any injury, loss or damage sustained or incurred by me or my guests arising our [sic] of or in any way associated with our attendance at or participation in my event through this contracted rental."

      iii. "I hereby fully and forever release, discharge and agree not to sue the City of Harrisburg, any of their officials, elected or appointed, employees (past or present) and

11

> contractors/vendors (past or present), sponsors or their officers, directors, agents, employees [sic] representatives, and successors for any loss, damage or expense brought on by me, anyone acting on my behalf, or anyone else because of conduct attributed to me."

26. In summary, the forms provided by the City generated the following laundry list of problematic conditions:

    a. Non-specific permit and "service fees" for both Riverside Park and the use of City streets;

    b. Cost-shifting provisions requiring Plaintiffs to pay staffing and equipment costs for traffic control;

    c. Unspecified rental fees for metered parking spaces;

    d. Internally contradictory insurance requirements:

        i. One form requires insurance in the amount of $250,000 per person and $1 million per occurrence without identifying the type of insurance required; and

        ii. Another form specifies three different types of insurance – (i) $1 million in event liability coverage, *plus* (ii) standard liability coverage with a limit of $1 million per occurrence and $2 million aggregate limit, *plus* (iii) another $1 million of auto liability coverage;

    e. Overbroad indemnification and waiver-of-liability requirements, including agreements to reimburse the City for *any* damage, harm and/or litigation, regardless whether actually caused by event organizers;

  f. A 90-day advance-notice requirement for events involving State roads, with no exception for demonstrations involving emergent issues of public concern;

  g. Responsibility to develop a traffic-control plan; and

  h. A requirement to notify area residents and businesses 30 days prior to the event.

27. No document shared by Harrisburg employees with Plaintiff Feridun or produced in response to a Right-to-Know-Law request by her counsel included a schedule of fees and costs, or standards for imposing fees and insurance requirements.

28. Harrisburg officials initially gave Plaintiff Feridun the foregoing forms, which she carefully digested. When she spoke to City representatives, they confirmed she would have to comply with the requirements, with the exception of the auto insurance provision, in order to get approval for the festival and the march.

29. Plaintiffs' initial attempts to purchase the requisite insurance failed – carriers simply were unwilling to underwrite events of this type. As a result, Plaintiffs were uncomfortable with the overbroad indemnification responsibilities, which made them liable for damage and costs beyond their control. The fees and costs were uncertain and estimates were too high for a low-budget coalition. And

the requirements to notify nearby residents and businesses and develop traffic-control plans were beyond Plaintiffs' capabilities.

30. On March 31, 2022, undersigned counsel sent a letter to Mayor Williams identifying numerous constitutional deficiencies in Harrisburg's shambolic permitting process, and asked her to waive the costs and fees, insurance, indemnification, parking, and traffic-control requirements. A copy of the demand letter is attached as Exhibit 6.

31. After an exchange of communications with the City's solicitor, on April 24, the parties reached an impasse. While the City had informally waived the insurance and indemnification requirements for the march, they refused to waive traffic-control fees or parking space rental for the march. The City also insists on enforcing several requirements associated with Saturday's festival, including a permit fee and the requirement to obtain insurance for the festival, which Plaintiffs were only able to procure from a carrier recommended by the City, at a rate of $917.

32. In all, the City's requirements would cost Plaintiffs well over $2,100, with the final tally for some fees still undetermined:

> a. $610 in permitting fees for the festival at Riverfront Park, which the City informed Plaintiffs would have been $1,110 for a non-resident applicant; *plus*

14

    b. $917 in insurance premiums for the one-day festival; *plus*

    c. $480 in purported staffing fees for traffic control[2]; *plus*

    d. $96 for a purported "equipment use fee" connected to the march[3]; *plus*

    e. An estimated $44 *per parking space* for an as-yet undisclosed number of metered spaces located on the streets on Plaintiffs' march route.

33. Without an ordinance regulating these aspects of the permitting process–the Parks ordinance does not address insurance or fees–Harrisburg is applying a standardless prior restraint to core political speech in traditional public forums.

34. Absent preliminary injunctive relief enjoining Defendants' enforcement of insurance, overbroad indemnification, fee-shifting, and other requirements for the Climate Convergence festival and march on June 11-12,

---

[2] After some back and forth with city officials, the City quoted this amount to Plaintiff in an email from John Snedeker, Special Events Logistics Coordinator, on April 13, 2022. In the email, the City arbitrarily determined the number of personnel the City would deploy and for how many hours, yielding a fee of $480. A copy of the email is attached as Exhibit 7.

[3] In the April 13, 2022, email from John Snedeker, attached as Exhibit 7, the City tacked on this fee, amounting to 20% of the above staffing fee, without explanation as to what equipment would be necessary or why the cost should be tied to a percentage of the staffing fee.

Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.

## CLAIMS

### Violation of the First Amendment to the United States Constitution

35. Defendants' informal and disjointed scheme for regulating use of the City's traditional public forums for expressive purposes is unconstitutional on its face and as applied, violating the First Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

36. First, Defendants' approval system for people wishing to use traditional public forums for expressive purposes is a standardless prior restraint on Plaintiffs' freedom of speech, which violates the First Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

37. Second, the fee-shifting, insurance, indemnification, notice and traffic-control-plan requirements are content-based restrictions of speech that are presumptively unconstitutional under the First Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

38. Finally, the fee-shifting, insurance, indemnification, notice and traffic-control-plan requirements are overbroad and not narrowly-tailored, which is a third fatal First-Amendment flaw in Harrisburg's permitting system.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Better Path Coalition Planning Group and Karen Feridun respectfully request that this Court provide the following relief:

(a) Declare that Harrisburg's permitting scheme to regulate uses of the City's traditional public forums violates Plaintiffs' rights under the First and Fourteenth Amendments to the Constitution;

(b) Declare that Harrisburg's fee-shifting, insurance, indemnification, notice and traffic-control-plan requirements violate the First Amendment;

(c) Enjoin the City from enforcing the following requirements for demonstrations in traditional public forums:

    (i) Insurance;

    (ii) Indemnification;

    (iii) Permit and service fees for use of public parks and roads;

    (iv) Fee shifting for police, traffic or any other fees and costs; and

    (iv) Other requirements, such as paying for parking spaces, providing advance notice to nearby homeowners and businesses, and developing traffic-control plans.

(c) Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

(d) Grant such other relief as this Court deems just and appropriate.

Dated: April 29, 2022            Respectfully submitted,

*/s/* Stephen A. Loney, Jr.
Stephen A. Loney, Jr.  (No. 202535)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

*Counsel for Plaintiffs*

18

## VERIFICATION

I, Karen Feridun, hereby affirm under the penalties of perjury as follows:

1. I am over the age of 18 and otherwise competent to testify.

2. The factual allegations in the foregoing Verified Complaint are, to the best of my knowledge and belief, true and accurate.

*Karen R. Feridun*

Karen Feridun

Dated:   April 29, 2022