LAVERY LAW

225 Market Street
Suite 304 ●P.O. Box 1245
Harrisburg, PA 17108-1245
**PHONE:** 717-233-6633
**FAX:** 717-233-7003
www.laverylaw.com

May 11, 2022

*Via ECF*

Honorable Christopher C. Conner
United States District Judge
Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

**RE: Better Path Coalition Planning Group, et al. v. City of Harrisburg, et al.**
**No. 1:22-cv-623**

Dear Judge Conner:

Per your standing instructions as to Discovery disputes, the Defendants have filed this letter for your consideration. As you are aware, the above noted matter is being expedited due to Plaintiffs' desire to use a City of Harrisburg park for a festival and separately to have a march on the streets of Harrisburg and, apparently, across at least one state road not controlled by the City in June, 2022. Pursuant to your Order of May 3, 2022 expediting Discovery (at Plaintiffs' request) the parties have sent one another Discovery. [Doc. 15] [Ex. A]. The date for full Discovery exchange as set in the Order is May 16, 2022. [Id.]. In compliance with the Order, the Defendants sent to Plaintiffs, Karen Feridun and the Better Path Coalition Planning Group, Defendants' Requests for the Production of Documents (RFPs) and Interrogatories in a timely manner and pursuant to the Order. [Sent out May 5, 2022, Exs. B and C].

Karen Feridun has acted in her individual capacity to seek various permits for use of the City's parks and streets. This fact is borne out by the fact that she named herself a Plaintiff in her individual capacity. [Docs. 1 and 4-1]. Likewise, at no time prior to the lawsuit and the motion for preliminary injunction did Better Path Coalition Planning Group ever approach the City for a permit or to schedule use of a street or park as far as the records show. It is as yet unknown how and when Better Path Coalition Planning Group formed, and Defendants are entitled to learn proportional and relevant information on any Plaintiff under the very liberal rules of federal Discovery. Fed. R.C.P. Rule 26.

Plaintiffs have refused to comply with the production sought. [Ex. D]. In fact, they have told the Defendants that "Plaintiffs will not provide documents or information in response to Defendants' other requests [other than the few they deign to provide] absent further order of the Court." [Ex. D, p. 3]. At the filing of this letter Plaintiffs have not provided Initial Disclosures.

The parties discussed these matters in depth and for almost an hour on May 6, 2022. On May 9, 2022 Plaintiffs' counsel sent a letter to Defendants stating their reasoning for refusing to comply with the requests. [Id.]. The reasoning provided does not comport with Fed. R.C.P. Rule 34.

Sadly, the parties have reached an impasse which now requires the Court's intervention.

Plaintiffs specifically refuse to provide Discovery responsive to RFPs Nos. 1, 3, 4, 5, 6, 8, 9, 12, 14, 15, 16, 17, and 18. Further, Plaintiffs refuse to respond to Interrogatories Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 17, and 18; in other words, the vast majority of the relevant interrogatories and RFPs. See the attached Requests for Production of Documents and the Interrogatories [Exs. B and C.].

Plaintiffs argue that the Discovery is not appropriate for the following reasons:

1. Plaintiffs claim the Discovery requests details about associational membership (RFPs 5, 6, 8, and 11) and (Interrogatories Nos. 1, 5, 6, and 17).
2. Plaintiffs argue that questions as to the finances of the Plaintiffs are irrelevant to the disputes in their litigation. [Ex. D, p. 2].

First, the law on this matter is clear. The burden is on the Plaintiffs to show why they have meritorious reasons to refuse to comply with the expedited Discovery they requested and which was duly ordered by this Court. Further, they must prove their objection is meritorious with and show that the request is unreasonable. *Milinazzo v. State Farm Ins,. Co*., 247 F.R.D. 691, 695 (S.D. Fla. 2007). If Plaintiffs refuse to produce Discovery they are required to serve a specific objection stating that responsive documents exist and that they are being withheld for a specific legal reason. Fed. R. Civ. P. 34(b)(2)(C). In this case they have failed to meet the Rule 34 standard utterly. See Ex. D. In fact, Rule 34 is not even noted by Plaintiffs in their refusal to comply with the Discovery. It is axiomatic that "the party resisting discovery 'must show specifically how … each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982).

Discovery, even expedited Discovery for a preliminary injunction, must be relevant and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiffs are being wholly disingenuous in refusing to produce discovery related to financial information in that the majority of their brief in support of the preliminary injunction (a bit over half) focuses directly on the topic of fees and the insurance payment. For example, a mere look at the headings of Plaintiff's brief prove their fixation with costs and fees and their allegation that the same are evidence of "standardless [sic.] discretion, content-based distinctions and overbroad restrictions on core political speech in traditional public forums." [Doc. 4-1, p. 10].] Defendants would note to the Court the following examples where Plaintiffs have directly made their finances, ability to pay fees and insurance, an issue in the preliminary injunction.

a. "2. The City's Arbitrary Fees and Conditions Cannot Be Justified Under any Applicable First Amendment Standard" [Id., p. 12].
b. "a. The City's cost, fee and permitting scheme vests unconstitutional discretion in government officials." [Id., p. 13].
c. "(i) the cost-shifting requirement and resulting $576 traffic control fee fail under the *Forsyth* content-neutrality requirement." [Id. p. 18].
d. "(ii) The insurance requirements also fail because they are content-based and overbroad." [Id., p. 19].

Likewise, Plaintiffs' brief is replete with supposed issues relating directly to fees and costs. For example, Plaintiffs provide a virtual litany of fees they take exception to: p. 9, a list of all costs they claim violate their rights, p. 14 their issues as to traffic control charges, staff time required by union contract, and equipment use fees, p. 15 use of metered spaces (however this is not controlled by the City nevertheless Plaintiffs throw it into the preliminary injunction), p. 16 the park fee for the festival, p. 17 insurance costs for the festival, p. 18 the traffic control fee, p. 19, and p. 20 insurance for the festival. In fact, Plaintiffs go so far as to write in their preliminary injunction brief that the City's requirements have "literally caused Plaintiffs in this case to pay a premium for political expression."

Despite making payment of fees and insurance a overriding issue in their preliminary injunction and demanding that they have expedited Discovery, when receiving narrowly tailored requests as to relevant financial information from the Plaintiffs (which only the Plaintiffs are in possession of), they cry foul in violation of the Court's Order and Rule 26 while failing to comply with Rule 34.

Plaintiffs also take exception to providing the financial information of Ms. Feridun. Yet, Karen Feridun is a named Plaintiff who has presented herself as a party in her purely individual capacity. Ms. Feridun has been the person who has had all contact with the City. Ms. Feridun has allowed and/or instructed her legal counsel to file suit. Likewise, she verified the Complaint personally and individually. [Doc. 1]. It is a little late for her to express qualms about answering financial questions when she herself has made the financing and payment of fees and insurance a central issue in both her preliminary injunction and her Complaint. [Doc. 1 and 4-1].

Plaintiffs cite *HIS, Inc. v. 48 States Transp., LLC,* 2020 U.S Dist. LEXIS 64 (M.D. Pa 2020) for the proposition that Defendants "could not possibly demonstrate the high relevance and compelling need required to compel production of tax returns." [Ex. D. p. 2]. **Plaintiffs overstate the standard and cite to a case that actually holds that production of the tax returns was required.** In *HIS* the court found that ten-years-worth of returns were too much but four-years-worth of returns were not, because the returns were relevant (in this case Defendants only ask for two-years-worth of financial information because this is directly relevant to the timeframe when Plaintiff applied for the permits at issue here). Likewise, the court considered the argument there that there were other sources of the same information. The court did not find that argument satisfactory either, because the court determined that the compelling party was not "limited to acceptance of the plaintiff's expert's analysis [as to income loss]." *Id.* at *6.

"Quite the contrary, 48 States is entitled to challenge these income loss claims, and towards that end may receive and review relevant tax returns filed by the plaintiff …" *Id.* at *7. Defendants encourage the Court to read *HIS* and they are, frankly, surprised Plaintiffs cited the case.

Second, Plaintiffs completely mischaracterize the RFPs and Interrogatories as requests for associational membership in violation of the First Amendment. However, in examining the Discovery it plainly indicates that Defendants do not want to know nor care who the members of the "Better Path Coalition Planning Group" may be, but Defendants are entitled to know who the leadership of the group consists of because they have the right to know when this "organization" came into being, and when and how it decided to litigate against the Defendants, especially considering that until the suit/preliminary injunction there is no evidence such a creature as the Better Path Coalition Planning Group existed let alone that it had any dealings whatsoever with the City. [See Defendants' RFP No. 16 limited solely to the Minutes or records of the vote/decision of Better Path Coalition Planning Group to pursue litigation, and Interrogatories No. 6 seeking only a point of contact for each sponsor group - not a membership list, and No. 12 seeking information on the group's vote to file suit]. The only known member of the leadership of the so-called Better Path Coalition Planning Group is Karen Feridun. [Doc. 4-1, p. 1]. These issues are directly relevant to standing. The actual questions do not touch upon associational membership in any constitutionally defective manner and it is obvious the requests are narrowly tailored.

Further, by virtue of the fact that the sponsoring organizations for the Climate Convergence event are plainly identified on the website of Climate Convergence any such protection in anonymity claimed by Plaintiff has already been waived. There is no danger of reprisal by the Defendants especially where no one in the City is seeking to prevent the festival or the march. There is no violence or threat of violence involved in this matter. There is no other source for the information sought. The requests are actually very narrowly tailored.

In support of their associational argument they cite *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) citing a 1958 civil rights era case relating to the NAACP and the State of Alabama where violence and the threat of violence came directly into play. Hardly the situation the Plaintiffs face in their already approved use of the park for a festival and the street (at no expense if they use the side-walk), for the proposition that providing information about membership would negatively impact their First Amendment associational rights. First, the Court in *Perry* noted that the information that was sought there was available from other sources. Here it is not. The point of *Perry* is the protection of associational rights where there might be a chilling effect by revelation of members. Here, no one cares who the members are other than those that participated in the decision to file the lawsuit, and those that serve on the Better Path Coalition Planning Group leadership (other than the already identified Karen Feridun) in that to date none of the these personages (if they exist) have had any known contact with the City. The City should not have to face "surprise" or a "got you" effort from these unknown persons who may or may not have dealt with the City on the issues in this litigation. *Perry* used a balancing test to determine whether there might be a chilling effect on First Amendment participation and considered the fact that the same information could be retrieved from other sources. Here there is no other well-spring to tap. The need for the information is vital as to standing and other issues and the actual requests are not even for information about the general members of the organizations as the Plaintiffs have erroneously tried to argue but only for the key leaders that were involved in the decision to file action and apply for the permits (if any exist).

Lastly, even excluding the RFPs and Interrogatories that deal with financial information or the vote of the Better Path Coalition Planning Group to sue, Plaintiffs have refused to comply with Discovery and provided no satisfactory reasoning at all for their refusal on the majority of the requests. They are in direct violation of this Court's Order and Rule 34.

In any case, the proportionality rule in federal courts applies even in the preliminary injunction context. Where Discovery is, "narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted." *Entertainment Technology Corp. v. Walt Disney Imagineering No. 03-3546*, 2003 U.S. Dist. LEXIS 19832, 2003 WL 22519440 AT *3 (E.D. Pa., October 2, 2003). In this case, Defendants' requests are not overly broad nor do they extend beyond the needs of the preliminary injunction. The point of the Discovery in such a case is to "better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Sawhorse Enterprises v. Church & Dwight Co.,* 2013 U.S. Dist. LEXIS 48155, 2013 WL 1343608, at *4. Further, the rule applies even in a First Amendment case. *Let Them Play MN v. Waltz*, 2020 U.S. Dist. LEXIS 239106 (MN, 2020) citing *Council on Am-Islamic Relations- Minnesota v. Atlas Aegis*, LLC No. 20-2195, 2020 U.S. Dist. Lexis 201288 (MN, 2020) (allowing expedited discovery where the scope of request is narrowly tailored).

Based on the facts and law cited hereinabove the Defendants respectfully ask the Court to issue an Order compelling Plaintiffs to respond to the requested Discovery within the relevant timeframe under Fed. R. Civ. P. 37, and to charge all costs and attorney's fees related to this matter against Plaintiffs.

Respectfully yours,

s/ *Frank J. Lavery*

Frank J. Lavery, Jr.

s/ *Murray J. Weed*

Murray J. Weed

/msk
Enclosures
cc: Stephen A. Loney, Jr. (w/encl., via ECF)
Richard Ting (w/encl., via ECF)
Witold J. Walczak (w/encl., via ECF)
Conner Hayes (w/encl., via ECF)