Exhibit 6

March 31, 2022

Hon. Wanda R. D. Williams
Mayor, City of Harrisburg
10 N. Second St., Suite 202
Harrisburg, PA 17101

Via email (mayor@harrisburgpa.gov)

Re: Unconstitutional Permitting Requirements Applied to Climate Convergence Events on Saturday and Sunday, June 11-12, 2022

AMERICAN CIVIL LIBERTIES UNION
Pennsylvania

Eastern Region Office
PO Box 60173
Philadelphia, PA 19102
215-592-1513 T
267-573-3054 F

Central Region Office
PO Box 11761
Harrisburg, PA 17108
717-238-2258 T
717-236-6895 F

Western Region Office
PO Box 23058
Pittsburgh, PA 15222
412-681-7736 T
412-345-1255 F

Dear Mayor Williams:

The American Civil Liberties Union of Pennsylvania ("ACLU-PA") has been retained to help organizers of a Climate Convergence, scheduled to be held in Harrisburg on June 11-12, 2022, to challenge unconstitutional restrictions on their right to use traditional public forums for non-commercial expressive purposes. The City of Harrisburg is imposing several unconstitutional conditions on two events during the weekend convergence: a festival at Riverfront Park on Saturday, June 11; and a march from Riverfront Park to the rear steps of the Pennsylvania Capitol Building on Sunday, June 12. The unconstitutional conditions include: assessment of police-user fees; insurance, indemnification and cost-recovery requirements; and unreasonable notice and planning provisions. Convergence organizers may have some small latitude to alter plans to accommodate whatever legitimate concerns the City may have, but they cannot comply with unconstitutional conditions. We write in the hope of resolving this matter amicably, without the need for litigation, but given the clear constitutional violations discussed below we will seek relief from a federal court if necessary.

## The Climate Convergence

The publicly-available website announcing the PA Climate Convergence describes the event as "a diverse, inclusive, peaceful gathering organized to demand urgent legislative and administrative action on climate." *See* https://www.pennsylvaniaclimateconvergence.org/. Organizers are promoting it as a peaceful, family-friendly event. The full weekend schedule (listed on the website) is:

Saturday, June 11 - Festival of art, music, theatre, talks, tabling and more at Riverfront Park;

Sunday, June 12 - Day of action starting with an interfaith service at Riverfront Park, followed by a march through downtown Harrisburg to the rear steps of the Capitol Building, where they conclude with a brief rally.

Organizers' desire to ensure a peaceful, law-abiding Convergence led them to seek necessary permits. Unfortunately, they cannot meet some of the City's conditions. For instance, they have been unable to purchase the requisite insurance.

**City of Harrisburg Requirements**

Divining how Harrisburg handles parades, marches, demonstrations, etc., in traditional public forums (streets, sidewalks, parks, squares, etc.) has been unexpectedly difficult. Both Convergence organizers and their lawyers have been unable to identify any ordinance in the City's Code regulating such activities. If our inability to identify applicable ordinances reflects their non-existence as opposed to our ineptitude, the deficiency renders the City's permitting system even more legally suspect. The absence of properly promulgated, clear rules increases the chances of arbitrary and discriminatory enforcement.

Unable to find applicable ordinances, Convergence organizers were directed to three documents, none of which references an ordinance. Absent an ordinance, we must assume that these documents reflect Harrisburg's policy:

1) The "Special Event Permit Procedures" document defines "special events" and includes, among other things:

    - A requirement that applicants submit a permit application "no less than 60 days before the event" and "no less than 90 days before the event"[1] if "State roads" are involved, which in this case they are.[2]

    - Paragraph 3 requires a "traffic control plan" and references a mandatory "service fee."

    - The reverse side discusses the "Approval Process" and references required fees for traffic control and actual staffing.

---

[1] This relatively lengthy advance-application requirement may be applied to some situations, but it cannot apply to all, especially ones involving demonstrations relating to contemporary current events and issues. *See, e.g., Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994) (holding a seven-day notice requirement for every demonstration in a public park too restrictive). Many other courts have stricken advance-application requirements, but we refrain from additional citations in the hope that this will not be an issue. We similarly hope that the resident-notification and traffic-plan requirements, *infra*, can be resolved and do not address them here. The content-based and overbreadth arguments discussed below will apply to these the foregoing requirements.

[2] We are mindful that part of the route will cross streets under PennDOT's jurisdiction. A letter raising similar constitutional concerns is being delivered to PennDOT today.

2) A second document relating to "special events" is titled "Application for Special Events Permit." This document provides more clarity and adds requirements, including:

- A requirement that the applicant notify businesses and residents in the area of the event at least 30 days beforehand.
- A statement that the requesting party "shall be liable for any loss, damage, or injury sustained by any person or by the City resulting from the activity for which the permit has been issued for this purpose."
- A requirement to provide a "Certificate of Insurance," without specifying the type of insurance.
- A statement that "All required fees must be paid prior to City Staff being scheduled for event," without specifying the amount of fees.

3) A third document, titled "Release and Waiver of Liability," seemingly applies to use of parks as it references "Park Permit" and approval by "Parks and Recreation staff." While there is no indication whether it applies to use of other public forums, like streets and sidewalks for marches and demonstrations, this form includes the following problematic provisions:

- One paragraph states:

> By submitting this Permit Application, the applicant is certifying that no expense will be borne by the City of Harrisburg in connection with the event or activity described in this Application for which the City will not be fully reimbursed. Further, the applicant certifies that the City is not liable or responsible for any cost, effect, error, omission or loss of any kind associated with the event or activity listed herein, and that the City is fully indemnified and held harmless from any claims or judgments arising from such. All park permit activities must be fully insured by the applicant with the City named as an "Additional Insured." All facilities are rented in "as is" condition.

- Below that, the form states that, "[t]here are no waivers or reductions of any fees for any park."

- A section headed, "PERMIT HOLDER RESPONSIBILITIES," reads:

> B. If it is determined by the City that Police, DPRE staff, or other City personnel resources must be present to ensure the safe operation of your event, the Permitee [sic] must pay for all personnel and equipment costs. The city reserves the right to require such payment in advance.

- A section titled, "INSURANCE REQUIREMENTS," specifies that applicants must sign a "Release and waiver of liability," show proof of Personal Auto Liability Coverage for themselves and all others who plan on driving and parking on-site…", and events with an estimated audience of more than 51 people must meet the following insurance requirements:

  - Applicants must provide Event Liability coverage of $ I, 000,000 [sic] per occurrence and $ I,000.000 [sic] aggregate ill: Standard Liability coverage of $1,000,000 per occurrence and $2,000,000 aggregate.
  - Applicants must provide Auto Liability of $1, 000.000 Combined Single Limit for Corporations and $300,000 Combined Single Limit for individuals.
  - *****All insurance certificates shall be originals listing the City of Harrisburg as an Additional Insured. All certificates must be signed by a licensed insurance broker or insurance company representative. Sub limits shall not be less than the per occurrence limit amount required. If certificates are not received at least thirty (30) days prior to the event, the permit is not valid.*

- Finally, the form requires applicants to endorse the following provisions, among others:

  > I hereby assume all risk and responsibility of damage to the property of the City of Harrisburg as it relates to my event and my use and/or misuse; and hod [sic] the City of Harrisburg, it's agents and representatives harmless for any and all suits relating to the use of City owned facilities.
  >
  > I hereby fully and forever release, discharge, and agree not to sue the City of Harrisburg, and of [sic] their officials, elected or appointed, employees (past or present), and contractors/vendors(past or present), sponsors or their officers, directors, agents, employees [sic] representatives, and successors for any and all claims, causes of action or liability for any injury, loss or damage sustained or incurred by me or my guests arising our [sic] of or in any way associated with our attendance at or participation in my event through this contracted rental.
  >
  > I hereby fully and forever release, discharge and agree not to sue the City of Harrisburg, any of their officials, elected or appointed, employees (past or present) and contractors/vendors (past or present), sponsors or their officers, directors, agents, employees [sic] representatives, and successors for any loss, damage or expense brought on by me, anyone acting on my behalf, or anyone else because of conduct attributed to me.

**Constitutional Violations**

Many of the foregoing requirements violate the First Amendment to the U.S. Constitution as they are applied to non-commercial events involving protected expression on matters of public concern, *i.e.*, political expression. We believe the following are unconstitutional:

1. Insurance requirement;
2. Indemnification requirement;

3. Reimbursement requirement for damage, harm, litigation, etc.;
4. Fees for police or other municipal employees (regardless whether assessed before or after the event);
5. 60-day-plus-advance-notice requirement;
6. Responsibility for traffic control plan; and
7. Responsibility to notify area residents and businesses.

While these provisions *may* be constitutional when applied to large-scale events, especially commercial ones, they are unconstitutional for non-commercial events designed to express views on topical issues.

It is black-letter law that political expression — in the form of marches, vigils, picketing, etc. — on streets, sidewalks and parks is quintessential First Amendment activity entitled to maximum constitutional protection. *Boos v. Barry*, 485 U.S. 312, 318 (1988). When expressive activities, like parades, rallies and vigils, take place in these quintessential public forums, the "government's ability to permissibly restrict expressive conduct is extremely limited..." *United States v. Grace*, 461 U.S. 171,177 (1983). Any refusal to allow our clients to use the City's parks and streets for the purpose of engaging in constitutionally protected expressive activities triggers a "heavy presumption" against validity. *The Nationalist Movement v. City of York,* 481 F.3d 178, 183 (3d Cir. 2007) (citing *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992)).

While governments may establish permit schemes to regulate the time, place, and manner of speech in traditional public forums, it is well established that such schemes must satisfy all of the following requirements:

1. Not "delegate overly broad licensing discretion to a government official;"
2. Be content-neutral;
3. Be narrowly tailored to serve a significant governmental interest; and
4. Leave open ample alternatives for communication.

*Forsyth*, 505 U.S. at 130. Lower court decisions have applied these principles to provisions like those at issue in Harrisburg and held them unconstitutional.

The U.S. District Court in Harrisburg and the Third Circuit Court of Appeals' decisions in a 2006 lawsuit against York addressed most of the issues raised by Harrisburg's permitting system. Relying largely on the U.S. Supreme Court's decision in *Forsyth County,* the District Court ruled York's insurance and municipal-cost requirements unconstitutional because they are not content neutral. *The Nationalist Movement v. City of York*, 425 F. Supp. 2d 574 (M.D. Pa. 2006). While demanding insurance from, and shifting municipal costs to, *all* event applicants may appear on the surface to be content neutral, *i.e.*, not dependent on speaker's message or who they are, in actuality they depend very much on both. Speaking of the security and traffic management fees, the Supreme Court observed that "'it cannot be said that the fee's justification has nothing to do with content' given that an accurate estimation of the necessary security would 'necessarily' involve an examination of the content of the speech, an estimate of the response of others, and a determination of the 'number of police necessary to meet that response.'" *The*

*Nationalist Movement*, 481 F.3d at 185 n. 7 (quoting *Forsyth*, 505 U.S. at 134). How many people are likely to attend the demonstration, how many might show up to protest, and the potential for strife between the two will dictate the level of security and traffic control and necessarily involve looking at the content of the permittee's message and who they are. The District Court held unconstitutional the requirement of insurance and pre-payment of anticipated costs in the form of a security deposit, and the Court of Appeals struck down York's post-event cost recovery requirement, all because they amounted to content-based regulations of speech. Harrisburg's provisions are materially indistinguishable.

Other federal courts around the country also have stricken requirements similar to Harrisburg's that shift police-and-traffic costs to the permittee, and that require insurance, indemnification and fee recovery. Some courts analyze the matter as impermissible content-based censorship, like the courts did in *City of York,* while others have applied an alternative First-Amendment theory that the provision is not "narrowly tailored" to advance the government's interest. "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

In *iMatter Utah v. Njord*, the Tenth Circuit U.S. Court of Appeals determined that Utah's liability-insurance and indemnification requirements, which were similar to Harrisburg's, were not narrowly tailored and violated the First Amendment. 774 F.3d 1258, 1266-72 (10th Cir. 2014). The court noted that none of these cost-shifting or government-immunizing provisions promoted the governmental interest in "public order, preventing traffic and sidewalk obstructions and promoting public safety." *Id*. at 1266. They were purely about money. The court also rejected Utah's interest in cost recovery because the requirements were substantially broader than necessary. Neither insurance nor indemnification "have any effect on the direct expenses Utah incurs in hosting a parade." *Id.* at 1267. Moreover, Utah failed to show any correlation between the insurance requirement and Utah's actual costs or risk of exposure, noting that the state's municipal-tort-immunity statute significantly limits their liability. *Id.* at 1270. Of course, Pennsylvania's Political Subdivision Tort Claims Act provides Harrisburg with similar tort immunity. *See* 42 Pa. C.S. § 8541.

Harrisburg's requirements are overbroad in yet another way. The Supreme Court has held that an organization exercising its First Amendment rights may not be held liable for the conduct of a third party "without a finding that [it] authorized—either actually or apparently—or ratified unlawful conduct." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 931 (1982). Consequently, Harrisburg's requirement that the permittee "assume all risk and responsibility of damage to the property of the City of Harrisburg as it relates to my event," and to "ho[l]d [sic] the City of Harrisburg, it's agents and representatives harmless for any and all suits relating to the use of City owned facilities," makes it unconstitutionally overbroad for this independent First-Amendment reason.

Many other courts have stricken as unconstitutional insurance, indemnification, cost-shifting, hold-harmless, and payment-recovery requirements, finding them to be content based or overbroad or both. *See, e.g., Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d

1011 (9th Cir.2009) (hold harmless); *Cent. Fla. Nuclear Freeze Campaign v. Walsh*, 774 F.2d 1515, 1524–25 (11th Cir.1985) (police fees); *E. Conn. Citizens Action Grp. v. Powers*, 723 F.2d 1050 (2d Cir. 1983) (insurance); *Collin v. Smith*, 578 F.2d 1197, 1207-09 (7th Cir. 1978) (insurance); *Stand Up Am. Now v. City of Dearborn*, 969 F. Supp. 2d 843 (E.D. Mich. 2013) (indemnification); *Coe v. Town of Blooming Grove*, 567 F. Supp. 2d 543 (S.D.N.Y. 2008), *aff'd in part and vacated in part*, 429 F. App'x 55 (2d Cir. 2011) (insurance); *Van Arnam v. Gen. Servs. Admin.*, 332 F. Supp. 2d 376 (D. Mass. 2004) (indemnification); *Courtemanche v. Gen. Servs. Admin.*, 172 F. Supp. 2d 251, 268 (D. Mass. 2001) indemnification); *Wilson v. Castle*, 1993 WL 276959, at *4 (E.D. Pa. July 15, 1993) (insurance); *Invisible Empire of the Knights of the KKK v. Mayor of Thurmont*, 700 F. Supp. 281, 285 (D. Md. 1988) (insurance and police fees); *Invisible Empire Knights of the KKK v. West Haven*, 600 F. Supp. 1427, 1434 (D. Conn. 1985) (police fees).

Several years ago, we successfully challenged Pittsburgh's special-events-permitting scheme, which like Harrisburg imposed police fees and required insurance and indemnification. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) (providing case background but ruling only on attorneys' fees). Not only did a federal judge issue a series of injunctions ordering Pittsburgh to amend its ordinance to remove the foregoing constitutionally obnoxious provisions, the City paid the ACLU-PA over $150,000 in attorneys' fees for having to bring the litigation.

Our clients want to resolve this dispute amicably and hope that the City will entertain discussion to determine how best to meet the needs of both the Climate Convergence and the City. Our clients have attempted to secure insurance for the Riverfront Park festival on Saturday, June 11, but have been turned down by several carriers. The Climate Convergence is not averse to purchasing modestly priced insurance for Saturday's festival, but thus far that has proven impossible. As explained above, the City cannot demand insurance – or the other burdensome requirements – for Sunday's march between Riverfront Park and the Capitol. Our clients are willing to discuss minor adjustments to time and route to address the City's concerns.

Because our clients need finality well in advance of the event, for planning and advertising purposes, we ask that you respond to this letter by 5:00 p.m. on Thursday, April 7. We acknowledge the abbreviated response time, but if we cannot overcome the disagreement we need to build in time to complete the litigation. If we do not hear from you by the appointed deadline, we will construe your silence as a refusal of this request. Please note that any federal court action will include a request for a preliminary injunction to vindicate our clients' constitutional rights and a request to pay our attorneys' fees. You may contact me at vwalczak@aclupa.org, or leave a message at 412-681-7736 x 321. We look forward to hearing from you and remain hopeful that we can reach a solution that works for both the Climate Convergence and the City.

Respectfully,

*Witold J. Walczak*

Witold J. Walczak
Legal Director

Stephen A. Loney, Jr.
Senior Supervising Attorney

cc: Neil Grover, Acting Chief Counsel (solicitor) (by email, ngrover@harrisburgpa.gov)