# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTER PATH COALITION | : | CIV. NO. 1:22-CV-00623 |
| PLANNING GROUP, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | (Judge Neary) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| CITY OF HARRISBURG, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.    Introduction.

Currently pending in this action is the defendants' motion to compel. The defendants seek an order requiring the plaintiffs to respond to certain interrogatories and requests for production which, at this point, the plaintiffs have responded to with only objections. For the reasons below, we will grant in part and deny in part the motion to compel.

## II.    Background and Procedural History.

The plaintiffs, Better Path Coalition Planning Group ("Better Path") and Karen Feridun ("Feridun"), initiated the instant action by filing a complaint on April 29, 2022. *Doc. 1.* The complaint names two defendants, the City of Harrisburg ("Harrisburg") and its Mayor, Hon. Wanda R. D. Williams ("Mayor

Williams"). *Doc. 1*.  On the same day they filed the complaint, the plaintiffs filed a

motion for temporary restraining order or preliminary injunction. *Doc. 3*.

After service of the complaint upon the defendants, and denial of the motion

for temporary restraining order, the parties engaged in "expedited discovery

necessary for [a] hearing" on the motion for preliminary injunction (hereinafter

"the initial period of discovery"). *Doc. 15*.  The case was then referred to us for the

purpose of conducting a settlement conference with the parties. *See verbal order

dated May 3, 2022*.  During the initial period of discovery, the defendants served

upon the plaintiffs 18 interrogatories and 18 requests for production. *See docs. 22-

2, 22-3*.  The plaintiffs responded with discovery responsive to some of the

interrogatories and requests for production and with objections to others. *See doc.

99-3*.  The defendants disagreed with the plaintiffs' objections and, therefore, filed

a letter raising the discovery dispute to the Court's attention ("the defendants' May

11, 2022 Letter"). *Doc. 22*.  The plaintiffs filed a letter in response. *Doc. 24*.  The

discovery dispute was referred to Magistrate Judge Martin C. Carlson who, after

conducting a phone call with the parties, ordered the parties to notify him if

discovery issues remain in contention after our scheduled settlement conference.

*Doc. 27*.

The settlement conference was a success insofar as the parties reached an

interim settlement that obviated the need for further consideration of the motion for

preliminary injunction. *Doc. 29*.  Over the following months, the parties continued to engage in settlement negotiations. *See docket generally*.  Ultimately, however, the parties were not able to reach a "final resolution" and, accordingly "negotiations were terminated." *Doc. 58*.

On February 2, 2024, the plaintiffs filed an amended complaint. *Doc. 60*. The defendants responded by filing a motion to dismiss (*doc. 66*) and a brief in support thereof (*doc. 68*).  After briefing (*docs. 74, 77*), the court denied the motion to dismiss on August 19, 2024. *Doc. 92*.

The parties continued to engage in discovery while the motion to dismiss was pending.  On August 6, 2024, the defendants filed a letter asserting that the discovery dispute originally raised by the defendants in May 2022 was now "reviv[ed]" ("the defendants' August 6, 2024 letter").  *Doc. 84*.  The plaintiffs responded with their own letter. *Doc. 85*.  We were referred the discovery dispute, and after a telephone conference with the parties, we permitted the defendants to file a motion to compel. *Docs. 86, 96*.  The defendants filed their motion to compel and brief in support thereof on September 23, 2024 (*docs. 99, 100*), the plaintiffs filed their brief in opposition on October 7, 2024 (*doc. 103*), and the defendants filed a reply brief on October 14, 2024 (*doc. 104*).  The Court stayed discovery pending resolution of the motion to compel. *Doc. 102*.

As discussed below, discovery generally must be "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b).  Accordingly, we find it helpful to summarize the plaintiffs' claims.  District Judge Christopher C. Conner summarized the allegations as follows:

> Better Path Coalition Planning Group ("Better Path") is an unincorporated association of organizations that advocate for renewable energy solutions and decreased reliance upon fossil fuels in Pennsylvania.  Karen Feridun—a resident of Berks County and member of Better Path—serves as a lead organizer for its annual Climate Convergence event, a "peaceful gathering organized to demand urgent action by our government to address the climate crisis." Better Path and Feridun (collectively, "plaintiffs") selected Harrisburg as the location of their event in 2022 and intended to march along city streets, near the capitol complex, and in Riverfront Park.
>
> Harrisburg's city code contains one ordinance regarding the use of public spaces; it obliges certain groups to obtain a permit to use city parks. The code does not provide guidance or standards governing the use of city streets or sidewalks, though, and its provision with respect to parks lacks detail. Consequently, plaintiffs were unable to consult formally promulgated regulations, and instead navigated a "patchwork" of conditions imposed by city officials exercising "standardless discretion."  Three documents communicated these conditions, entitled "Special Event Permit Procedures," "Application for Special Event Permit," and "Release and Waiver of Liability[.]" In terms of costs, defendants imposed unspecified service fees, shifted the cost of "traffic control" staff and equipment to plaintiffs, and charged unspecified rental fees for metered parking spaces.  Plaintiffs also note that defendants' forms contained an internal inconsistency regarding the required amount of insurance, overbroad indemnification and waiver requirements, burdensome notice requirements, and an instruction to develop a traffic control plan.
>
> Plaintiffs encountered difficulties securing the required insurance because "carriers simply were unwilling to

underwrite events of this type." They sent a letter to Mayor
Williams in March 2022 identifying "constitutional
deficiencies" and requesting that she waive certain
requirements. Ultimately, defendants informally waived the
insurance coverage and indemnification requirements, but
maintained that plaintiffs would have to pay traffic control fees,
parking space rental fees, and a permit fee for Riverfront Park;
they would also have to obtain insurance for the portion of the
event occurring in the park. Plaintiffs initiated this lawsuit on
April 29, 2022, after efforts at consensus reached this impasse.
They also filed a motion for a preliminary injunction.

Before we resolved plaintiffs' motion for a preliminary
injunction, the parties entered into a settlement agreement.
According to its terms, plaintiffs would only pay a $610 permit
for use of Riverfront Park, a $480 traffic control fee to close
city streets, and a $96 "equipment usage fee" related to traffic
control. Because they continued to dispute the propriety of
these charges—which totaled $1,186—plaintiffs placed that
amount in escrow pending the outcome of this litigation. They
acquired insurance for their use of Riverside Park at a cost of
$917, and the 2022 Climate Convergence took place "without
incident." It included a festival at Riverfront Park, a march
through downtown Harrisburg, a brief rally, and a
demonstration during which plaintiffs installed a climate
countdown clock on the steps of the capitol and delivered
petitions to elected officials.

The settlement agreement also provided that defendants
would work in good faith to clarify and alleviate some of the
constitutional defects plaintiffs had identified. Nevertheless,
defendants purportedly provided no such guidance in advance
of the 2023 Climate Convergence event, causing plaintiffs to
again spend significant time and resources navigating
burdensome permitting requirements. Defendants again
required a permit fee for Riverfront Park and proof of
insurance, and they imposed terms regarding indemnification
and liability related to use of the park. They did not seek to
impose all the conditions discussed in 2022, but plaintiffs
encountered a new hurdle in 2023: defendants provided
incomplete, informal, confusing, and dubious guidance
regarding efforts to hang Climate Convergence banners on city-

controlled utility poles.  Faced with these requirements, plaintiffs were forced to abandon their "chosen" public forums; they hosted the 2023 Climate Convergence at the capitol complex, which defendants do not control.  As in 2022, the event took place "without incident."  Negotiations to reach a global settlement broke down, and plaintiffs filed an amended complaint on February 2, 2024.

Plaintiffs plan to hold the 2024 Climate Convergence in Harrisburg on October 20 and October 21 of this year.  They allege that, in failing to enact an ordinance or otherwise cure constitutional defects in their regulatory scheme, defendants are engaging in unlawful prior restraint of core political speech, and otherwise burdening the First Amendment rights of individuals seeking to exercise them in traditional public fora.  They seek declaratory and injunctive relief, reimbursement of funds pursuant to 42 U.S.C. § 1983, and costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

*Doc. 91* at 2–5 (internal citations to the amended complaint omitted) (footnotes omitted).  The docket does not reflect any information about the 2024 Climate Convergence. *See docket generally*.

## III.    Standard of Review.

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery.  In accordance with this rule, a party seeking discovery may move for an order compelling production or inspection. Fed. R. Civ. P. 37(a).  The scope of discovery that may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

*(1) Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope and conduct of discovery are within the sound discretion of the trial court." *Robert D. Mabe, Inc. v. Optum Rx*, No. 3:17-CV-1102, 2020 WL 4334976, at *2 (M.D. Pa. July 28, 2020). "The exercise of this discretion is guided, however, by certain basic principles." *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2020 WL 109654, at *3 (M.D. Pa. Jan. 9, 2020). Rule 26 provides that only "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" falls within the proper scope of discovery. "Therefore, valid claims of relevance, privilege, and proportionality cabin and restrict the court's discretion in ruling on discovery issues." *Hamill v. Twin Cedars Senior Living, LLC*, No. 3:20-CV-231, 2020 WL 5082570, at *2 (M.D. Pa. Aug. 27, 2020).

"Relevant evidence" is defined by the Federal Rules of Evidence as "anything having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A party moving to compel

discovery bears the initial burden of proving the relevance of the information sought. *Id*. Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id*. (quoting *In re Urethane Antitrust Litigation,* 261 F.R.D. 570, 573 (D. Kan. 2009)).

Finally, another rule defines the court's discretion when ruling on motions of this type: the court cannot compel the production of things that do not exist, nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. Therefore, absent proof of deliberate spoliation of evidence, the court cannot sanction the failure to produce that which no longer exists. *See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho–McNeil–Janssen Pharmaceuticals, Inc.,* No. 08–5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); *Knauss v. Shannon,* No. 08–1698, 2009 WL 975251 (M.D. Pa. April 9, 2009).

## IV.    Discussion.

The pending motion to compel does not identify the specific interrogatories and requests for production in question. *Doc. 99.*  For example, the proposed order attached to the motion to compel appears to refer to all of the defendants' interrogatories and requests for production, stating: "Plaintiff is hereby ORDERED to answer Defendants First Set of Interrogatories Directed to Plaintiff and their First Requests for Production of Documents, without objection, within TEN (10) DAYS of entry of this Order." *Id.* at 99-2.  The defendants' May 11, 2022 Letter, however, identifies as at issue interrogatories numbers 1–10, 12–14, and 17–18 and requests for production numbers 1, 3–6, 8–9, 12, and 14–18. *Doc. 22* at 2.  Despite stating that the "material issues" identified in the defendants' May 11, 2022 letter "remain unchanged," in the defendants' August 6, 2024 letter the defendants assert that the plaintiffs "refus[ed] to answer" interrogatories numbers 1, 3–6, 8–9, 12, and 14–18, and requests for production numbers 1, 3–6, 8–9, 12, and 14–18. *Doc. 84* at 2 (citing *doc. 22*).  Because the defendants cite the May 11, 2022 letter to support their list of unanswered interrogatories and requests for production, we assume there was an error, and we construe the defendants' motion as seeking an order compelling

responses to interrogatories number 1–10, 12–14, and 17–18 and requests for

production numbers 1, 3–6, 8–9, 12, and 14–18.[1]

After reviewing the plaintiffs' responses to the interrogatories and requests for

production, we find that some of these requests for production have been answered—

specifically, requests for production numbers 1, 3, 4, 14, 15, and 16.[2] *Doc. 99-3* at

---

[1] Herein, we endeavor to thoroughly address all discovery issues raised by the parties, despite the confusing manner in which the parties' briefs rely on letter briefs filed in 2022, which not only contain inconsistencies, but also clearly argue the application of standards pertaining to discovery in aid of preliminary injunctions.

[2] The relevant portions of the responses are as follows:

- RFP No. 1: "Subject to and without waiver of such General and Specific Objections, Plaintiffs will produce responsive non-privileged documents." *Doc. 99-3* at 23.
- RFP No. 3: "Subject to and without waiver of the forgoing General and Specific Objections, Plaintiffs incorporate by reference their response to Request No. 3 as it fully restated herein." *Doc. 99-3* at 24. We find that the plaintiffs appear to have made their own error in numbering here. In the preceding paragraph, the plaintiffs "object to this Request to the extent that it is duplicative of Request No. 2." *Id.* at 24. We presume the plaintiffs did not intend the absurd result of incorporating the very response they were writing. Thus, we construe this response as incorporating the response to request for production number 2, and we conclude that request for production number 3 is answered.
- RFP No. 4: "Subject to and without waiver of the forgoing General and Specific Objections, Plaintiffs state that they will disclose any proposed deposition, hearing and/or trial exhibits at the time and in the manner proscribed by the Federal Rules of Civil Procedure, the Local Civil Rules for the Middle District of Pennsylvania, and any judicial procedures required by the presiding judge in this matter." *Doc. 99-3* at 24–25.
- RFP No. 14: "Subject to and without waiver of the forgoing General and Specific Objections, Plaintiffs state that they have no non-privileged documents that are responsive to this Request." *Doc. 99-3* at 31–32.

23–35.  We will, therefore, deny the motion to compel insofar as it seeks responses to requests for production numbers 1, 3, 4, 14, 15, and 16.  We turn now to the remaining disputed interrogatories (specifically, interrogatories numbers 1–10, 12–14, and 17–18) and requests for production (specifically, requests for production numbers 5–6, 8–9, 12, and 17–18).

### A. We will deny the motion to compel as to the interrogatories and requests for production about which the defendants provide no argument.

The defendants' brief in support contains argument only regarding disclosure of information relating to Better Path's members and funding.[3]  *See doc. 100*.  Accordingly, the plaintiffs argue in their brief in opposition that we should not compel responses to the unanswered interrogatories and requests for production which are not the subject of argument in the defendants' motion to compel or brief in support thereof. *Doc. 103* at 5.  In their reply brief, the

---

- RFP No. 15: "Subject to and without waiver of the forgoing General and Specific Objections, Plaintiffs state that they have no non-privileged documents that are responsive to this Request." *Doc. 99-3* at 32–33.
- RFP No. 16: "Subject to and without waiver of the forgoing General Specific Objections, Plaintiffs state that they have no non-privileged documents that are responsive to this request." *Doc. 99-3* at 33–34.

[3] The defendants also include brief argument relating to interrogatory number 12, which seeks information regarding Better Path's decision to sue the defendants.  This portion of the argument is addressed later, when we analyze whether the defendants have shown that interrogatory number 12 is relevant.

defendants counterargue that they "rel[y] on pleadings of record[,]" and "incorporated by reference [their] prior filing in this matter" because they felt the need to "elucidate[] the issues efficiently" with judicial economy in mind. *Doc. 104* at 4.  While we appreciate this effort, even after thoroughly reviewing the record as it pertains to this dispute (*docs. 22, 24, 84, 85, 99, 100, 103, 104*), we cannot find argument regarding certain unanswered interrogatories and requests for production.

Specifically, we find argument relating to topics other than membership lists and funding only in the defendants' very first discovery dispute letter, filed in May 2022. *Doc. 22.*  The defendants' argument is as follows:

> Lastly, even excluding the RFPs and Interrogatories that deal with financial information or the vote of the Better Path Coalition Planning Group to sue, Plaintiffs have refused to comply with Discovery and provided no satisfactory reasoning at all for their refusal on the majority of the requests.  They are in direct violation of . . . Rule 34.
>
> In any case, the proportionality rule in federal courts applies even in the preliminary injunction context.  Where Discovery is, "narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted."  In this case, Defendants' requests are not overly broad nor do they extend beyond the needs of the preliminary injunction.  The point of the Discovery in such a case is to "better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing."  Further, the rule applies even in a First Amendment case.

*Doc. 22* at 5 (internal citations omitted).  But we are no longer at the preliminary injunction stage.  Thus, the bulk of this argument is irrelevant.  Furthermore, a conclusive statement that the defendants find the plaintiffs' objections not "satisfactory" is not sufficient argument.

Because interrogatories numbers 7, 13, 14, 17, and 18, and requests for production numbers 9, 17, and 18, are not the subject of argument, we find that the defendants have failed to meet their burden to show relevancy to the claims or defenses thereto.  We discuss each interrogatory and request for production in further detail below.

### 1.  Interrogatory Number 7.

The plaintiffs responded to interrogatory number 7—which sought the date when the Pennsylvania Climate Convergence website was "set up, activated, and able to accept donations"—by providing the month and year when the website "launched." *Doc. 99-3* at 12–13.  The plaintiffs also stated their objections to the interrogatory as not only "overbroad, unduly burdensome, oppressive, and harassing" but also seeking irrelevant information. *Id.*  In their letters and briefs, the defendants did not include any argument as to why this request specifically is relevant or as to why the month and year was an insufficient response.

## 2.  Interrogatories Numbers 13, 14, 17, and 18.

As to interrogatories 13, 14, 17, and 18, the plaintiffs objected to each of

these interrogatories as follows:

> Plaintiffs object to this Interrogatory as overbroad,
> unduly burdensome, oppressive, and harassing because it seeks
> information that is not relevant to any claim or defense in this
> litigation or any issue raised by Plaintiffs' Motion for
> Preliminary Injunction, and because it is not narrowly tailored
> to the needs of the impending preliminary injunction hearing.

*Doc. 99-3* at 15–19.   None of these interrogatories pertain to Better Path's

membership or funding,[4] about which the defendants spend their letters and briefs

arguing. *See docs. 22, 84, 99, 100, 104*.  And it is the defendants' burden to prove

the relevance of the information sought. *See Hamill*, 2020 WL 5082570, at *2.

Because the defendants have provided the court with no argument regarding the

---

[4] Specifically, the interrogatories seek:

- "Please identify any and all social media accounts you used between January 2022 and the present, whether active or inactive, providing the username for each account." *Doc. 99-3* at 15 (interrogatory number 13).
- "State the following information regarding Plaintiff Karen Feridun: [full name, date and place of birth, present home address, occupation & employer]." *Doc. 99-3* at 16 (interrogatory number 14).
- "Identify any meeting, conference, conversation, document, email, letter or other correspondence where the Better Path Planning Group discussed or determined the estimate of how many persons would attend the march and the festival.  Provide the date and time of any such communication and the names, addresses, email addresses and telephone numbers of all participants." *Doc. 99-3* at 18 (interrogatory number 17).
- "Identify the process used to create the estimates you used for determining the number of persons attending the festival and march." *Doc. 99-3* at 18 (interrogatory number 18).

relevance of the information sought in interrogatories 13, 14, 17, and 18, the

defendants have not met their burden.

### 3. Requests for Production Number 9.

Request for production number 9 seeks documents relating to previous

lawsuits, claims, complaints, or charges filed by or against Feridun, Better Path,

and Pennsylvania Climate Coalition. *Doc. 99-3* at 28–29. The plaintiffs' objection

to request for production number 9 is as follows:

> Plaintiffs object to this Request as vague, ambiguous, and
> unintelligible. Plaintiffs further object to this Request because
> it appears to seek documents that are publicly available and
> readily obtainable by Defendants. Plaintiffs further object to
> this Request as overbroad, unduly burdensome, oppressive, and
> harassing because it seeks documents and information that are
> not relevant to any claim or defense in this litigation or any
> issue raised by Plaintiffs' Motion for Preliminary Injunction,
> and because it is not narrowly tailored to the needs of the
> impending preliminary injunction hearing.

*Id.* The defendants do not provide any argument regarding this request—why the

plaintiffs should produce supposedly publicly available and readily obtainable

documents, the relevancy of this request, or its proportionality to the needs of the

case. Thus, again, the defendants have not met their burden to show the relevancy

of their discovery requests.

### 4. Requests for Production Numbers 17 and 18.

As to requests for production numbers 17 and 18, these requests for production seek documents relating to the estimate of the attendees at the festival and the participants in the march and "the process used to create" these estimates. *See doc. 99-3* at 34.  The objections to both of these requests for production are as follows:

> Plaintiffs object to this Request as overbroad, unduly burdensome, oppressive, and harassing because it seeks documents and information that are not relevant to any claim or defense in this litigation or any issue raised by Plaintiffs' Motion for Preliminary Injunction, and because it is not narrowly tailored to the needs of the impending preliminary injunction hearing.

*Id.*  Again, we are faced with a dearth of argument relating to the relevance of these requests for production.  The defendants have, therefore, failed to meet their burden to show relevancy.


***

Thus, the defendants have not met their initial burden of proving relevance or otherwise addressing the plaintiffs' other objections as to interrogatories numbers 7, 13, 14, 17, and 18, and requests for production numbers 9, 17, and 18. *See Hamill*, 2020 WL 5082570, at *2.  Without such argument regarding the

documents sought in requests for production numbers 9, 17, and 18, we cannot grant the defendants' motion to compel as to these requests for production.

For these reasons, we will deny the defendants' motion to compel as to interrogatories 7, 13, 14, 17, and 18, and requests for production numbers 9, 17 and 18. Accordingly, remaining in question are interrogatories numbers 1–6, 8–10, and 12, and requests for production numbers 5–6, 8, and 12.

### B. We will deny the motion to compel as to the interrogatories and requests for production for which the defendants have not met their burden of proving relevancy or proportionality.

The plaintiffs objected to the remaining interrogatories and requests for production because, among other things they "seek[] information that is not relevant to any claim or defense in this litigation[.]" *See doc. 99-3.* For their part, the defendants argue that because "Plaintiffs' amended Complaint includes several references to the significance of Plaintiff Coalition's membership structure, its fundraising methods and financial capacity to bolster its claims against Defendant City's regulatory and permit regime[,]" interrogatories and requests for production related thereto are relevant. *Doc. 100* at 3. The parties' more specific arguments regarding relevancy relate to requests for information about the decision to pursue the instant suit, membership information, and requests for financial information. We deal with each argument in turn below.

17

### 1. Interrogatory Number 12.

Interrogatory number 12 asks the plaintiffs to "identify the date when Better

Path . . . met to obtain authorization from its members to proceed with the [instant]

civil action . . . and the vote tally for the action." *Doc. 99-3* at 15.  The plaintiffs

responded as follows:

> Plaintiffs object to this Interrogatory to the extent that it
> seeks information protected by the attorney-client privilege
> and/or attorney work product doctrine.  Plaintiffs further object
> to this Interrogatory as overbroad, unduly burdensome,
> oppressive, and harassing because it seeks information that is
> not relevant to any claim or defense in this litigation[.]

*Id.*  The defendants do not address the objections based on attorney-client privilege

and the attorney work product doctrine. *See generally docs. 22, 84, 100, 104*.  The

defendants do, however, address the relevancy objection in the May 11, 2022

Letter. *Doc. 22*.  According to the defendants, they are "entitled to know who the

leadership of [Better Path] consists of because they have the right to know when

this 'organization' came into being, and when and how it decided to litigate against

the Defendants, especially considering that until the suit/preliminary injunction

there is no evidence such a creature as . . . Better Path . . . existed let alone that it

had any dealings whatsoever with the City." *Id.* at 4.  Vitally, per the defendants,

"[t]hese issues are directly relevant to standing." *Id.*

The defendants do not provide legal support for these assertions.  Even

assuming they are correct, however, that they are entitled to know when Better

Path came to being, it does not follow that they are also entitled to know "when and how [Better Path] decided to litigate against the Defendants," (*id.*). With only a short, conclusory statement bereft of case law in a three-year-old letter "incorporated" by the brief in support, the defendants have not shown the relevancy of the information interrogatory number 12 seeks to an argument regarding standing, or any other claim or defense raised by the parties. Accordingly, we will deny the motion to compel as to interrogatory number 12.

## 2. Interrogatories Relating to Membership Information.

According to the plaintiffs' objections, to answer interrogatories number 1, 5, and 6 would "require[e] disclosure of individuals' associational membership."[5] *See doc. 99-3* at 5, 6, 10, 12. Interrogatory number 1 seeks the names, addresses, and telephone numbers of Better Path's members. *Id.* at 5. Interrogatory number 5 seeks the names, addresses, emails, and telephone numbers of "the organizers of the Pennsylvania Climate Convergence." *Id.* at 9. And interrogatory number 6

---

[5] Interrogatory number 2, which seeks the names and addresses of "all persons or entities having any knowledge or information pertaining to the facts giving rise to this suit and/or injuries and damages" and "a description of all facts and/or information that each individual has knowledge about and stating whether each person has provided you with an oral or written statement" (*doc. 99-3* at 5), also seeks associational information. The plaintiffs, however, do not object to interrogatory number 2 as irrelevant. *See id.* We will, therefore, analyze interrogatory number 2 below when addressing the parties' arguments regarding the First Amendment concerns raised by the motion to compel.

seeks "the representative, point of contact, address, email address, and telephone
number" of 35 members of Better Path listed by the defendants. *Id.* at 10–11. To
each of these interrogatories, Better Path stated the following objections:

> Plaintiffs object to this Interrogatory as overbroad,
> unduly burdensome, oppressive, and harassing because it seeks
> information that is not relevant to any claim or defense in this
> litigation . . . . Plaintiffs further object to this Interrogatory
> because it seeks information protected from disclosure under
> the First Amendment to the U.S. Constitution by requiring
> disclosure of individuals' associational membership. See *Perry
> v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010)
> (applying *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S.
> 449, 462 (1958) ("It is hardly a novel perception that compelled
> disclosure of affiliation with groups engaged in advocacy may
> constitute as effective a restraint on freedom of association as
> [other] forms of governmental action.")).

*Id.* at 5–12.[6]

The defendants addressed the objection to the alleged irrelevancy of these
interrogatories in their brief in support. *Doc. 100.* Specifically, the defendants
argue that the plaintiffs' amended complaint "includes several references to the

---

[6] In addition to these objections quoted herein, the plaintiffs also object to
interrogatory number 6 "to the extent it seeks information that is publicly available
and easily obtainable by Defendants." *Doc. 99-3* at 12. The defendants do not
provide any counterargument to this point. To the extent the interrogatory seeks
information which is not publicly disclosed, the plaintiffs argue that such
information is "protected from disclosure under the First Amendment of the U.S.
Constitution by requiring disclosure of individuals' associational membership." *Id.*
Because we conclude that the defendants have not met their burden regarding the
relevance of the information sought by this interrogatory, we do not reach the
plaintiffs' arguments regarding publicly available information or the First
Amendment.

significance of [Better Path's] membership structure . . . to bolster its claims against [the] City's regulatory and permit regime[.]" *Doc. 100* at 3.  According to the defendants, the "[p]laintiffs cannot rely upon these attestations in support of their claims, yet also refuse Defendants' reasonable requests into these nonprivileged matters relevant to their claims and defenses thereto, and proportional to the needs of the case." *Id.*

Generally, it is true that the plaintiffs cannot refuse "reasonable requests into . . . nonprivileged matters relevant to their claims and defenses thereto, and proportional to the needs of the case." *Doc. 100* at 3.  The question, however, is whether the defendants' requests are, in fact, relevant and proportional.  A conclusory statement that the requests are relevant and proportional does not meet the defendants' burden of proving the relevance of the information sought. *See Hamill*, 2020 WL 5082570, at *2.  We thus turn to the defendants' more specific arguments.

The defendants point to the plaintiffs' description of Better Path as "consisting of 'nearly forty statewide frontline and grassroots-led organizations,' led by 'private citizens and lay volunteers'" and the plaintiffs' references to the "goals, motivations, deliberations and capabilities of [Better Path's] leadership" in the amended complaint. *Doc. 100* at 5.  The defendants argue that "discovery requests concerning the individuals involved in [Better Path] are . . . clearly

21

relevant in light of the averred actions and deliberations of [Better Path] distinct from the individual activities of . . . Feridun." *Id.* This argument demonstrates the relevance of inquiries into the people who took certain actions on behalf of Better Path, but it does not show the relevance of inquiries into the full list of Better Path's membership—including individuals who were not involved in any of the "averred actions and deliberations of [Better Path]." *Id.* Accordingly, we find that the defendants have not shown the relevancy of the information sought by interrogatories numbers 1 and 6.

The defendants also argue that to "meaningfully investigate[] or verif[y]" the plaintiffs' claims that the requirements for their event were "not merely excessively burdensome as a matter of law, but actually exceeded their organizational capacity to fulfill" they must inquire into "the individuals whose decisions and capabilities impelled that [sic] averred actions." *Doc. 100* at 5–6. This argument fares no better. Again, this argument shows relevance as to the individuals involved in certain actions, but not to all members of Better Path.

Standing alone, the defendants' arguments may show the relevancy of the information interrogatory number 5 seeks—i.e., information regarding the organizers of the Pennsylvania Climate Convergence ("organizers"). But the defendants do not provide the court with argument regarding why they would need to know the identities of the organizers if they are not persons with knowledge or

information pertaining to the facts underlying this suit. And, as discussed below, we will grant interrogatory number 2 which seeks those persons with knowledge or information pertaining to the facts underlying this suit. Without information as to why the identities of individuals who may be named in response to interrogatory number 5 but not to interrogatory number 2 are relevant, the defendants have thus failed to meet their burden.

The defendants also argue that "due process requires disclosure of [the] plaintiffs' identity[.]" *Id.* at 6 (capitalization and emphasis altered). Specifically, the defendants assert that they are faced with "[o]ne-sided anonymity" which "precludes [the] [d]efendants from properly asserting their potential defenses, including standing and privilege." *Id.* at 7. The defendants elaborate that they are concerned that Better Path "may possibly have access to privileged information," because "[f]ormer counsel, including former City solicitors, have impermissibly attempted to take part in claims against [the] [d]efendants in the past[.]" *Id.* The plaintiffs counterargue that the defendants' due process argument is deeply flawed as it "lacks legal basis and is illogical." *Doc. 103* at 14. The plaintiffs elaborate in their brief in opposition that the City's argument is "entirely speculative" and "completely detached from the City's expansive requests for Better Path's membership information." *Id.*

Although it is true that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses[,]"[7] this does not lead to a conclusion that Better Path's membership information must be disclosed.  Better Path's members are not all necessarily going to be adverse witnesses.  Furthermore, the City's reference to wanting to learn the "[p]laintiffs' identity" is confusing, as the plaintiffs are identified: Feridun and Better Path.  And it is these plaintiffs' standing that has a bearing on this case.  Moreover, to the extent that the defendants are concerned about former employees being involved in Better Path, a request for a full membership list is not proportional to this need.

We, therefore, will deny the motion to compel as it pertains to interrogatory number 1, seeking Better Path's full membership list; to interrogatory number 5, seeking the identities of the organizers of the Pennsylvania Climate Convergence; and to interrogatory number 6, seeking the contact information for certain members of Better Path.

---

[7] This quote is from *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970).  The defendants use this quote in their brief in support (*doc. 100* at 7) but attribute it to *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 108 (1963).  The *Goldberg* Court cites *Willner* as supportive of this proposition, but the quoted language is not contained in *Willner*.  Defense counsel is cautioned to be more careful with citations going forward.

### 3. Interrogatories and Requests Regarding Funding.

Interrogatories numbers 3, 4, 8, 9, and 10, and requests for production numbers 5, 6, 8, and 12 all request information relating to Better Path's funding (collectively "discovery requests regarding funding"). *See doc. 99-3*. The plaintiffs objected to all of the discovery requests regarding funding as follows: "Plaintiffs object to this [interrogatory/request for production] as overbroad, unduly burdensome, oppressive, and harassing because it seeks information that is not relevant to any claim or defense in this litigation[.]"[8] *Id.* at 8, 9, 13–14, 25–27, 28, 31. We thus analyze whether the defendants have met their burden regarding a showing of relevancy.

The defendants argue that discovery requests regarding funding are relevant because in the amended complaint the plaintiffs "directly relate [their] allegations of harm to their . . . fundraising, budget, and alleged financial resources." *Doc. 100* at 4. According to the defendants, the "[p]laintiffs also object to the cost of the required insurance required, and the waiver and assumption of liability and indemnification." *Id.* Moreover, the defendants argue the "[p]laintiffs place at issue . . . their financial . . . capacities in service of their arguments as to the alleged burden of Defendants' permitting regulations." *Id.* at 6. "Without any

---

[8] The plaintiffs object to interrogatory number 8 by incorporating their response to interrogatory number 3, which is quoted in relevant part above. *Doc. 99-3* at 13.

discovery into the finances . . . of the various [Better Path] entities," the defendants

argue, they "are unable to investigate the veracity of Plaintiffs' averred

limitations[.]" *Id.* Further, as support for their arguments about both relevancy and

due process, the defendants point to their defense that the Climate Convergence

has "commercial and financial aspects" and, therefore, the permitting scheme is

"subject to a lower level of scrutiny in light" thereof. *Id.* at 8; *see also doc. 104* at

9.

The plaintiffs counterargue in their brief in opposition that the defendants

are applying an incorrect standard because "whether a complaint 'references' a

matter is not the standard for the scope of discovery." *Doc. 103* at 7. Furthermore,

according to the plaintiffs, the defendants fail to "explain how Better Path's

financial information could possibly alter applicable Constitutional standards for

Defendants' regulation of public forums[,]" as "[c]onstitutional standards for free

speech do not vary depending on the speakers' financial circumstances." *Id.* at 8–9.

The defendants, for their part, argue that the plaintiffs' opinion of its defense

should not affect discovery requests. *Doc. 104* at 9.

The interrogatories and requests regarding funding can themselves be

divided into two categories: interrogatories and requests regarding funding *sources*

and interrogatories and requests regarding funding *amounts*.[9]  We address each
category below.

### a. Interrogatories and Requests Regarding Funding Sources.

As to the interrogatories and requests regarding funding sources, in addition
to the above objections, the plaintiffs also object because these interrogatories and
requests "seek[] information protected from disclosure under the First Amendment
to the U.S. Constitution by requiring disclosure of individuals' associational
membership and donation information." *See id.* at 8, 9, 13, 25–27, 28.  We do not
reach the First Amendment objections, however, because we find the defendants
have not met their burden to show that the interrogatories and requests regarding
funding sources are relevant.

None of the parties' arguments—summarized above—address why the
defendants would need not only financial information but information regarding

---

[9] Interrogatories numbers 3, 4, and 8, and requests for production numbers 5, 6, and 8, all seek information regarding the *sources* of funding for Better Path and/or the Pennsylvania Climate Convergence. *See id.* at 8, 9, 13, 25–27, 28. Collectively, therefore, we will hereinafter refer to interrogatories numbers 3, 4, and 8, and requests for production numbers 5, 6, and 8 as "interrogatories and requests regarding funding sources."  Similarly, interrogatories numbers 9 and 10 and request for production number 12 request information regarding the *amounts* of funding available to the plaintiffs.  Accordingly, we will collectively refer to interrogatories 9 and 10 and request for production number 12 as "interrogatories and requests regarding funding amounts" hereinafter.

the *sources* of Better Path's or Feridun's finances.  Neither party cites to case law on this point.  Neither party even separately addresses the interrogatories and requests regarding funding sources and the interrogatories and requests regarding funding amounts.

The defendants generally argue that they need to know the information the interrogatories and requests regarding funding seek because the plaintiffs' capacity to pay the fees is pivotal to the plaintiffs' claims.  The plaintiffs' capacity to pay the fees—which the plaintiffs have already stipulated to—is irrelevant to who donated the funding that could be used in that manner.  The defendants get closer with their argument that they need the information the interrogatories and requests regarding funding seek to support their defense that the Climate Convergence has commercial aspects.  But the interrogatories and requests regarding funding sources broadly seek lists of sponsors and donors and the dollar amount given to the Pennsylvania Climate Convergence and donations collected through certain webpages and other mechanisms.  To the extent that this is marginally relevant, the interrogatories and requests regarding funding sources as written are not proportional to the marginal relevance shown. *Cf* Fed. R. Civ. P. 26(b)(1) (stating that when determining whether discovery is proportional to the needs of the case, the court shall consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

28

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Thus, we will deny the motion to compel as to the interrogatories and requests regarding funding sources.

### b. Interrogatories and Requests Regarding Funding Amounts.

We turn now to the interrogatories and requests regarding funding amounts. Interrogatory number 9 instructs the plaintiffs to "[i]dentify the total amount of donations collected from the date of the set-up of the website for Pennsylvania Climate Convergence until April 29, 2022." *Doc. 99-3* at 13–14. Interrogatory number 10 instructs the plaintiffs to "[i]dentify the total funds held by Better Path . . . and the Pennsylvania Climate Convergence on April 29, 2022." *Id.* at 14. Finally, request for production number 12 seeks "[a]ny and all documents showing the total amount of funds available to Pennsylvania Climate Convergence, . . . Feridun, and Better Path . . . from April 29, 2022, until the present." *Id.* at 11.

The arguments regarding the relevancy of the interrogatories and requests regarding funding amounts are outlined above. For convenience, we simply reiterate that the defendants argue that these interrogatories and requests, like the other interrogatories and requests regarding funding, are relevant to the plaintiffs' claims because funding is referenced in the amended complaint and relevant to the

defendants' proposed defense that the Climate Convergence had commercial aspects. Although we are unclear about the significance of April 29, 2022, in the interrogatories and requests relating to funding amounts, the parties do not provide any arguments relating to the time frames contained in the interrogatories and requests regarding funding amounts.[10] The plaintiffs also do not provide any arguments regarding the proportionality of the request. Accordingly, noting the defendants' proposed defenses, we find that the defendants have met their burden of showing relevancy as to the interrogatories and requests relating to funding amounts.

It is, therefore, the plaintiffs' burden "to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Hamill*, 2020 WL 5082570, at *2 (quoting *In re Urethane Antitrust Litigation,* 261 F.R.D. 570, 573 (D. Kan. 2009)). The plaintiffs argue that funding information is not relevant because their financial information cannot "possibly alter applicable Constitutional

---

[10] The parties decided not to exchange updated discovery requests and responses thereto, despite the frequent references to the preliminary injunction motion which was resolved in 2022 and the fact that an amended complaint has since been filed. This may explain why the interrogatories and requests for production refer to April 29, 2022, the date the initial complaint was filed.

standards[.]" *Doc. 103* at 8–9.  We are not here to evaluate the merits of the case or the defenses thereto.  Because, as discussed above, the defendants have shown that the interrogatories and requests for production relating to funding amounts are relevant and proportional to the needs of the case, the burden is now on the plaintiffs.  The plaintiffs have not made any argument as to the potential harm of requiring the disclosure of the information sought in the interrogatories and requests regarding funding amounts.[11]  We thus find that they have not made the requisite showing of potential harm caused by the proposed discovery which outweighs the relevance.  Accordingly, we will grant the motion to compel as to the interrogatories and requests regarding funding amounts.

### C. We will grant the motion to compel as to the interrogatory which is relevant and not blocked by First Amendment protections.

Interrogatory number 2 seeks:

the name and home and/or business addresses of all persons or entities having any knowledge or information pertaining to the facts giving rise to this suit and/or injuries and damages sustained by you, and . . . a description of all facts and/or information that each individual has knowledge about and stating whether each person or entity has provided you with an oral or written statement.

---

[11] Note that the plaintiffs did not object to the interrogatories and requests regarding funding amounts on the basis of First Amendment protections.

*Doc. 99-3* at 4.  We note that interrogatory number 2 seeks the identity of *anyone* having knowledge of the underlying facts in the case and the alleged damages, not only Better Path members.  Nevertheless, the plaintiffs objected to interrogatory number 2 because it "seeks information protected from disclosure under the First Amendment to the U.S. Constitution by requiring disclosure of individuals' associational membership." *Id.* at 6, 10.  In their objection, the plaintiffs point to *NAACP v. State of Ala. Ex rel. Patterson*, 357 U.S. 449, 462 (1958), in which the Supreme Court stated: "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental actions[.]"

The defendants, however, argue that *NAACP* and other cases cited by the plaintiffs in their communications regarding this dispute do not concern discovery requests.  *Doc. 100* at 9.  According to the defendants, the "[p]laintiffs conflate the standard for a government regulation *imposed* externally by legislative or execution [sic] action upon an organization through its police powers with a request for discovery from a civil defendant that merely happens to be a municipality or a government official." *Id.* at 11.  Furthermore, according to the defendants, the only case the plaintiffs cite which does concern discovery, *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), only found that "internal campaign strategy and advertising communications that were . . . never intended

32

for public disclosure" were protected from disclosure by the First Amendment.[12]

*Doc. 100* at 9.  The defendants further argue that the plaintiffs must make a

"concrete and uncontroverted showing of harm, and a likelihood of substantial

restraint[.]" *Id.* at 13.  According to the defendants, the plaintiffs have not done so

here, and cannot do so because there is no "reasonable likelihood of [a criminal

investigation] arising from the requests for discovery here." *Id.* at 14.

The plaintiffs, for their part, counterargue that "[c]ourts routinely deny . . .

discovery [that seeks an entity's membership and financial information], as it

'would have the practical effect of discouraging the exercise of First Amendment

associational rights.'" *Doc. 103* at 10 (quoting *Perry*, 591 F.3d at 1152).  The

plaintiffs further argue that "the chilling effect of compelled disclosure of Better

---

[12] The defendants, utilizing bold typeface rather than any citations to legal
support, also argue that the "[p]laintiffs cannot on the one hand assert the right of
the Coalition to bring suit, and on the other, present it as an entity with no form or
substance, immune to inquiry and without the possibility of representatives who
may testify on its behalf." *Id.* at 10.  But this is not the plaintiffs' objection as
presented to the court.  Rather, the plaintiffs argue not that Better Path has no form
or substance, but rather that the details of its form, i.e. it's membership lists, are
protected by the First Amendment.  Accordingly, we do not engage with the
defendants' "form and substance" argument further.
    The defendants also argue that because Better Path is a coalition, "the First
Amendment privilege of internal communications does not apply[.]" *Id.*  The
plaintiffs disagree with this reading of the case law. *Doc. 103* at 13.  Regardless,
we are only considering interrogatory number 2 at this juncture, which does not on
its face request internal communications.

Path's membership and financial information is evident." *Id.* at 11. Specifically, according to the plaintiffs,

> Allowing government entities access to membership and financial information in response to civil rights lawsuits would chill First Amendment rights in two different ways. First, compelled disclosure would chill organizational members' and donors' associational rights. If members and donors knew their identities and information would be revealed to the very government entities accused of violating an organization's free speech rights, members and donors would be deterred from associating with the organization. Second, compelled disclosure of such intrusive and expansive information by plaintiffs would deter organizations from exercising their right to vindicate constitutional rights in court.

*Id.* at 11–12 (citations omitted).

In their reply brief, the defendants point to two pieces of evidence which, according to the defendants, shows a lack of chill: (1) the growth of Better Path since the initiation of this lawsuit and (2) partial lists of members that are available publicly. *Doc. 104* at 12. But Better Path does not assert that the chill has or would occur based on the initiation of a lawsuit but rather that the contemplated chill would occur if the membership lists were disclosed. Moreover, Better Path objects to disclosing complete lists of members, which no one alleges are public at this point. Further, the defendants' continued assertion that they are acting in the role of civil defendants rather than in their governmental role does not change the reality that to require disclosure to the defendants is to require disclosure to a governmental entity. The defendants would then have in their possession

membership lists which could be used for any number of reasons at any point in the future. Reassurances that the lists would stay in the defendants' control does not alleviate this concern either, because the defendants are themselves governmental.

"Courts have developed a two-part framework for evaluating First Amendment privilege claims in the context of discovery." *Pulte Home Corporation v. Montgomery County Maryland*, No. GJH-14-3955, 2017 WL 1104670, *3 (D. Md. Mar. 24, 2017). First, the party asserting the privilege—here, the plaintiffs—must make a prima facie showing that the privilege applies by "demonstrat[ing] an objectively reasonable probability that compelled disclosure will chill associational rights[.]" *Id.* (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 1145, 1153 (D. Kan. 2010)). The plaintiffs point to court cases in which courts have recognized that disclosure of membership lists to governmental entities has a chilling effect on associational rights. The defendants' conclusory statements that there is no intended criminal investigation at this juncture does little to mitigate this impact. *Cf id.* ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."). And the plaintiffs have argued that disclosure in this context, by a plaintiff in a civil rights lawsuit, would also be a stumbling block for entities who believe their

35

First Amendment rights have been violated.  The plaintiffs' proffered arguments regarding chill may, therefore, reach the level of an objectively reasonable probability that compelling a response to interrogatory number 2 will chill associational rights.  Regardless, as discussed below, the defendants have met their burden to show that granting the motion to compel is still appropriate in this instance.

We thus turn to the second part of the framework, which "requires the Court to engage in a balancing test" wherein "the burden is largely on the party seeking disclosure to prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information." *Pulte Home Corporation*, 2017 WL 1104670 at *4. Interrogatory number 2 seeks the identities of individuals who have knowledge of the underlying facts in this case.  This common[13] interrogatory clearly has a tendency to make the existence of facts vital to the plaintiffs' claims more or less probable. *Cf* Fed. R. Evid. 401.  In fact, we struggle to imagine a more relevant

---

[13] *See, e.g. Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 539 (3d Cir. 2007) (quoting a defendants' interrogatory as seeking "individuals with knowledge of the facts relating to those alleged damages or other relief"); *Smith v. Central Dauphin School Dist.*, No. 1:05-CV-01003, 2007 WL 188569, *1 (M.D. Pa. Jan. 22, 2007) ("Defendants propounded interrogatories on Plaintiff requesting that she 'identify' individuals with knowledge of the facts concerning her case").

inquiry.  And identifying these individuals and their relevant knowledge may well be necessary to developing a defense to the pending claims.  These individuals likely have knowledge of the plaintiffs' capabilities and the nature of the Pennsylvania Climate Convergence as required for the defendants to prevail on their proposed defenses.  Although the plaintiffs proffer Feridun as an alternative source for all information relevant to suit, the defendants point out that, according to the amended complaint, Better Path took actions separately from Feridun.  The parties have not provided the court with argument regarding whether this is the least restrictive way of obtaining the sought information.  On balance, we conclude that the balancing test weighs in favor of disclosing the requested information to the defendants.  Accordingly, we will grant the motion to compel as to interrogatory number 2.

## V.  Conclusion.

For the reasons stated above, we will grant in part and deny in part the defendants' motion to compel.  Specifically, we will grant the motion to compel as to interrogatories numbers 2, 9, and 10, and request for production number 12.  We will deny the motion to compel in all other respects.  An appropriate order will issue.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge